IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA


DENNIS EARL FULBRIGHT, et al.,    )
                                    )
           Plaintiffs,        )
                                    )
                                    )     CIV-03-99-W
v.                               )     consolidated with
                                    )     CIV-03-125-W
EDWARD L. EVANS,[1]           )     consolidated with
                                    )     CIV-03-1465-W
           Defendant.      )


## THIRD SUPPLEMENTAL REPORT  AND  RECOMMENDATION

Plaintiffs Fulbright, Cottriel, and Harmon are state prisoners appearing with court-appointed counsel in this civil rights action brought pursuant to 42 U.S.C. §1983[2] seeking prospective injunctive relief for the alleged deprivation of their First Amendment right to freely exercise their Orthodox Jewish religion as a result of the Defendant's refusal to

---

[1]Edward L. Evans has been appointed as the Acting Director of the Oklahoma Department of Corrections upon the retirement of former Director Ron Ward. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Edward L. Evans is substituted for former Director Ron Ward as the Defendant in this suit being brought against the Director in his official capacity.

[2]A separate cause of action filed by another prisoner, <u>Billy Edward Jones v. Ron Ward</u>, Case No. CIV-03-98-W, was originally consolidated in this Court with the causes of action filed by Plaintiffs Fulbright and Cottriel. However, because Jones was released from prison after filing his action, his cause of action seeking prospective injunctive relief was deemed moot and dismissed.

provide a kosher diet.   The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B).

I. Background

In Plaintiffs' Complaints, which have been consolidated in this Court, Plaintiffs seek a permanent injunction directing the Oklahoma Department of Corrections ("DOC") to provide them with a nutritionally-adequate kosher diet.[3]   Following the filing of their Complaints, Plaintiffs moved for a preliminary injunction to require  Defendant to provide them a kosher diet.   Counsel was appointed to represent the Plaintiffs, and an evidentiary hearing was conducted on the motion before the undersigned.   In the  Second Supplemental Report and Recommendation previously entered herein, the undersigned made findings of fact concerning the evidence presented at the preliminary injunction hearing, which are adopted by reference herein, and recommended that Plaintiffs' request for a preliminary injunction be granted.   By Order entered  January 21, 2005, United States District Judge West found that Plaintiffs had shown a substantial likelihood of success on the merits of their First Amendment claim, that the loss of a First Amendment freedom clearly constitutes irreparable harm and that to the Plaintiffs such loss is actual and not theoretical, that the threatened injury resulting from the denial of Plaintiffs' ability to engage in constitutionally protected activity outweighs the harm to the DOC if the preliminary injunction issued, and that such an injunction would not be adverse to the public's interest in ensuring that free

---

[3]There is no dispute that Plaintiffs exhausted their administrative remedies prior to filing their causes of action.

religious expression is not curtailed. Based on these findings, Judge West adopted the Second Supplemental Report and Recommendation, granted the Plaintiffs' Motion for Preliminary Injunction, and ordered the Defendant to provide the three Plaintiffs a kosher diet at no cost to them until further order of the Court. Judge West also re-referred the matter to the undersigned consistent with 28 U.S.C. §636(b)(1)(B) for further proceedings.

Now before the undersigned for consideration are the cross-motions for summary judgment filed by Plaintiffs and Defendant. Each party seeks summary judgment under Fed. R. Civ. P. 56 with respect to Plaintiffs' claim of a First Amendment free exercise deprivation. Both parties have responded to the opposing parties' summary judgment motions, and both parties have filed reply briefs. Thus, the motions are at issue.

II. <u>Standard of Review</u>

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. <u>Kaul v. Stephan</u>, 83 F.2d 1208, 1212 (10th Cir. 1996); <u>Calhoun v. Gaines</u>, 982 F.2d 1470, 1472 (10th Cir. 1992); <u>Manders v. State of Oklahoma</u>, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." <u>Id</u>. Additionally, if the moving party

demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

III. Legal Issues

In their Motion for Summary Judgment, Plaintiffs contend that Defendant's policy of not providing a kosher diet to Plaintiffs violates their right under the First Amendment to freely exercise their Orthodox Jewish faith.  In Defendant's Motion for Summary Judgment, Defendant contends that he is entitled to summary judgment because (1) litigation of Plaintiffs' First Amendment free exercise claim is precluded by prior decisions rendered in the District Court of Osage County and the United States District Court for the Northern District of Oklahoma, (2) Plaintiffs have alleged only mental or emotional injury and have not shown physical injury as required by 42 U.S.C. §1997e(e), (3) providing Plaintiffs with a kosher diet would violate the First Amendment's Establishment Clause, and (4) the increased costs of providing kosher diets and institutional security and administrative concerns are legitimate penological objectives which are reasonably related to Defendant's policy of not providing kosher diets and therefore no First Amendment deprivation has occurred as a result of Defendant's policy.

IV. Uncontroverted Facts

In Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion"), Plaintiffs submit a Statement of Material and Uncontroverted Facts ("Plaintiffs' Statement"). Plaintiffs'

Motion, at 2-5.  Defendant has also submitted a Statement of Uncontroverted, Material Facts in his Motion for Summary Judgment ("Defendant's Statement").   In his response to Plaintiffs' Motion, Defendant disputes only one of the facts asserted in Plaintiffs' Statement. Thus, all of the facts presented in Plaintiffs' Statement except for the paragraph numbered six are uncontroverted for purposes of resolving the cross-motions for summary judgment.

However, not all of the uncontroverted facts contained in Plaintiffs' Statement are material for purposes of the resolution of the cross-motions for summary judgment. Likewise, not all of the uncontroverted facts contained in Defendant's Statement are material for purposes of resolving the cross-motions for summary judgment.   Other than a one-sentence argument contained in Defendant's Statement, Defendant has not challenged the sincerity of the three Plaintiffs' beliefs in Orthodox Judaism.[4]   Defendant's one-sentence statement does not present any legal authority for his assertion of insincerity.   As such, the one-sentence argument does not adequately raise an issue before this Court concerning the sincerity of Plaintiff Cottriel's religious beliefs.  See Utahns for Better Transp. v. United

---

[4]In Defendant's Statement, Defendant states "Plaintiff Cottriel, during the time he had requested kosher food from Ward, purchased clearly non-kosher items, such as pork rinds and Vienna sausages, from the prison canteen, seriously calling into question the sincerity of his requests and his attempts to keep kosher."  The only factual support for the statement provided by Defendant is a report of canteen usage by Cottriel covering approximately a one-month period in March-April 2003.  In response to this statement, Plaintiffs provide copies of receipts for Plaintiff Cottriel's canteen purchases for the same time period.  Plaintiffs also provide documentary evidence in the form of deposition testimony of an official at Davis Correctional Facility where Cottriel is now in custody in which the official states that Cottriel has purchased only kosher items from the prison's canteen except for soda, which is considered kosher only in some states.  Plaintiff's Response, Ex. 4, at 31.

States Dep't of Transp., 305 F.3d 1152, 1175 (10th Cir. 2002)(issues not adequately briefed are deemed waived; including an issue within a list is not adequate briefing), modified on rehearing, 319 F.3d 1207 (10th Cir. 2003).   Moreover, the record contains more than sufficient evidence to support the finding that Plaintiff Cottriel has a sincere belief in his Orthodox Judaism faith, even though he may have strayed on occasion from following the strict requirements normally associated with a kosher diet.   The undersigned previously found in the Second Supplemental Report and Recommendation that Plaintiffs' religious beliefs are sincerely held in accordance with Orthodox Judaism, and Defendant has provided insufficient evidence to overcome this factual finding.   Therefore, the relevant facts for purposes of resolving the cross-motions encompass only the issue of reasonableness of the penological objectives submitted by Defendant to support DOC's policy of not providing a kosher diet.   These material facts are as follows:

1.  In order to keep kosher in accordance with Jewish law, meat and dairy cannot be cooked at the same time.   Cooking utensils and equipment used for meat also cannot be used for dairy or other non-kosher foods.   Kosher food cannot come into contact with non-kosher food during the cooking process.   Only certain types of animals and certain animal parts can be eaten according to Jewish dietary law.   Only fish with scales and fins and animals that chew their cud and have cloven hooves may be eaten.   Also, all meat products must be slaughtered in accordance with Jewish law to qualify as kosher.

2.  Kosher has spiritual meaning to an Orthodox Jew and not keeping kosher will weaken an Orthodox Jew's relationship with God.  Also, an individual who is in the process of converting to Orthodox Judaism will want to follow strict Jewish dietary law.

3.  No special storage space is needed as long as the kosher food stays in its original packaging.

4.  Defendant, through DOC policy, provides inmates with a regular diet, a non-pork diet, a vegetarian diet, or a specialized medical diet.[5]  A non-pork diet is related to the Muslim faith. DOC's provision of a non-pork diet to inmates has not resulted in a severe security problem.

5.  The available diets provided to inmates do not meet the strict requirements for food preparation, consumption, or storage of kosher food.

6.  Defendant, through DOC policy, allows inmates to practice Orthodox Judaism by attending services, participating in Jewish holidays, and possessing articles of importance to the Orthodox Jewish faith.

7.  Currently there are only 52 inmates in the DOC who claimed to be Jewish upon entering the DOC system.

---

[5]In Plaintiffs' Statement, Plaintiffs state that "[i]n at least the Eastern District of Oklahoma Defendant provides inmates with either a regular diet or a non-pork diet." However, in Defendant's Statement, Defendant states that DOC, through its written policy, provides inmates with a regular diet, a non-pork diet, a vegetarian diet, and special medical diets.  This statement is supported by testimony at the evidentiary hearing showing that DOC provides more food options than that contained in Plaintiffs' Statement.  Thus, the factual statement contained in Defendant's Statement, rather than the incomplete statement of fact contained in Plaintiffs' Statement, is deemed the uncontroverted, material fact relevant to the resolution of the cross-motions for summary judgment.

8.  DOC inmates receiving special diets are monitored.  If prison staff observe an inmate eating in the wrong line, the inmate can be verbally reprimanded or charged with a misconduct for not complying with a special diet.

9.  Keeping kosher and the observance of kosher dietary laws are strictly tied to the Jewish faith and would benefit only Jewish inmate believers.

10. Rabbi Goldman testified at the evidentiary hearing  that, in his opinion, it could cost as much as $8.00, with a "low end" of $4.50, per meal to purchase pre-packaged, frozen kosher meals.  Bobby Boone, the DOC's Eastern Region director, testified at the evidentiary hearing that feeding the frozen kosher dinner would be the "cheapest" way to feed kosher meals to inmates and estimated it would cost approximately $5.00 per meal to feed such kosher meals to the inmates.

11. The State of Oklahoma presently feeds the average inmate in the DOC system at a cost of approximately $2.50 per day, which includes three meals per inmate.  That is presently the figure used by DOC facilities to prepare budgets for food costs for inmates.

12.  At the present time, the DOC is feeding kosher, pre-packaged, frozen dinners to the three Plaintiffs, in compliance with the preliminary injunction.  The meals are purchased through Sysco, a vendor from whom the DOC purchases other food items.

13.  Defendant has legitimate concerns about institutional security related to food, namely the perception of special or favorable treatment to one inmate group and the reality of fighting and riots related to food issues.

14.  In another case pending before the United States District Court for the Western District of Oklahoma, Case No. CIV-03-1404-W, and styled <u>Madyn Abdulhaseeb a/k/a/ Jerry Thomas v. S. Beasley, et al.</u>, another DOC inmate has sued, at least in part, over the denial of his request for a halal diet which strictly adheres to Islamic law.

V. <u>Res Judicata/Collateral Estoppel</u>

Defendant contends that Plaintiff's cause of action is barred by the doctrine of res judicata and/or collateral estoppel.  Defendant states that in 1988 a district court in Oklahoma rejected the claim of a state prisoner that he was constitutionally entitled to a kosher diet consistent with his Jewish religion.  Defendant identifies this case as <u>Middaugh v. Champion</u>, Case No. C-88-206.  Defendant contends that in a subsequent cause of action filed in the United States District Court for the Northern District of Oklahoma, which Defendant identifies as <u>Mosier v. Oklahoma Dep't of Corrections</u>, Case No. 88-C-357-C, the court entered a judgment *nunc pro tunc* in 1991 in favor of the defendants on the grounds of res judicata and/or collateral estoppel in reliance upon the prior state district court opinion. Defendant has not provided the Court with the unpublished decisions in these cases.  Thus, Defendant provides no evidentiary support for his assertion that the same first amendment issue raised herein was litigated in those 1988 and 1991 decisions.

Defendant raised this same "issue preclusion" defense in a Motion to Dismiss filed in these consolidated cases on May 16, 2003 (Doc. #8).  In a Report and Recommendation entered July 17, 2003, the undersigned recommended that Defendant's Motion to Dismiss be denied.  Defendant did not file an objection to the Report and Recommendation despite

9

the advice therein concerning the parties' right to object and the consequences of a failure

to object.  The Report and Recommendation was  adopted by the Court in an Order entered

August 11, 2003. <u>Jones v. Ward</u>, Case No. CIV-03-98-A (Order, Alley, D. J.)(Doc. # 16).

The Court's adoption of the previous Report and Recommendation prevents Defendant from

raising the same issue under the law-of-the-case preclusion rule.  However, even if the law-

of-the-case preclusion rule is not applicable, the undersigned again rejects the "issue

preclusion" defense raised by Defendant in his Motion for Summary Judgment.

Under well-established principles of collateral estoppel, "once a court has decided an

issue of fact or law necessary to its judgment, that decision may preclude relitigation of the

issue in a suit on a different cause of action involving a party to the first case." <u>Allen v.</u>

<u>McCurry</u>, 449 U.S. 90, 94 (1980).  "The doctrines of collateral estoppel and res judicata,

however, apply only in cases where controlling facts *and* law remain unchanged." <u>Spradling</u>

<u>v. City of Tulsa</u>, 198 F.3d 1219, 1223 (10th Cir. 2000).  "Consequently, res judicata and

collateral estoppel are inapplicable where, between the first and second suits, an intervening

change in the law or modification of significant facts create new legal conditions." <u>Id</u>.  <u>See</u>

<u>Oklahoma City Airport Trust v. Huggins</u>, 105 P.3d 344, 346 (Okla. Civ. App. 2004)("A

judgment should be denied a conclusive effect to future actions if there has been a change

in the law.  This applies to all types of changes in the law, including acts of the Legislature,

judicial decisions and changes in regulations.  Generally, res judicata is no defense where

between the time of the first judgment and the second action there has been an intervening

change in the law creating an altered situation.").  In response to Defendant's Motion,

Plaintiffs contend that the Tenth Circuit Court of Appeals' decision in <u>Beerheide v. Suthers</u>, 286 F.3d 1179 (10th Cir. 2002), represents new and controlling precedent and therefore the doctrines of res judicata and collateral estoppel do not apply.   As the undersigned found in the previous Report and Recommendation, the decision in <u>Beerheide</u> as well as consistent decisions in other circuits, <u>e.g.</u>, <u>Johnson v. Horn</u>, 150 F.3d 276 (3rd Cir. 1998); <u>Ashelman v. Wawrzaszek</u>, 111 F.3d 674 (9th Cir. 1997), recognizing Orthodox Jewish inmates' right to receive a kosher diet "reflect a change in the law in this controversial area of prison litigation, and the application of res judicata and/or collateral estoppel under these circumstances is not appropriate." Report and Recommendation, at 6.   There are no material issues of fact for trial concerning this issue, and Defendant's Motion for Summary Judgment seeking summary judgment in his favor on the basis of res judicata and/or collateral estoppel should be denied.

VI. <u>42 U.S.C. §1997e(e)</u>

Defendant alternatively contends that he is entitled to summary judgment because Plaintiffs have failed to demonstrate facts showing they have suffered any physical injury as required by 42 U.S.C. §1997e(e).   Defendant misconstrues this statutory limitation on recovery by prisoners in 42 U.S.C. §1983 actions.   Title 42 U.S.C. §1997e(e) provides that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The Tenth Circuit Court of Appeals has construed this statutory limitation as a bar to compensatory damages for mental and emotional injuries in the absence of physical injury. Searles v. Van Bebber, 251 F.3d 869, 874-877 (10th Cir. 2001). Plaintiffs have not sought compensatory damages in this case and have requested only injunctive relief. Title 42 U.S.C. "§ 1997e(e) does not affect actions for declaratory and injunctive relief." Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 808 (10th Cir. 1999). Accordingly, Defendant is not entitled to summary judgment on this basis, and Defendant's Motion for Summary Judgment based on 42 U.S.C. §1997e(e) should be denied.

VII. Establishment Clause

Defendant alternatively seeks summary judgment on the ground that the relief Plaintiffs seek would violate the First Amendment's Establishment Clause. The First Amendment contains the provision: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." As the Supreme Court recently explained in Cutter v. Wilkinson, __ U.S. __, 125 S.Ct. 2113 (2005),

> [t]he first of the two clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people. While the two Clauses express complimentary values, they often exert conflicting pressures.

Id., at 2120. Although Plaintiffs have not sought relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), it is necessary to review this federal legislation and the recent Supreme Court decision upholding the RLUIPA's institutionalized-persons

12

provision against an Establishment Clause challenge to better understand the Defendant's

Establishment Clause challenge made herein.

Congress enacted the RLUIPA in response to the Supreme Court's holding in <u>City of

Boerne v. Flores</u>, 521 U.S. 507 (1997), in which the Court declared the Religious Freedom

Restoration Act unconstitutional.  The RLUIPA contains the following provision in relation

to inmates:

> No government shall impose a substantial burden on the
> religious exercise of a person residing in or confined to an
> institution....even if the burden results from a rule of general
> applicability, unless the government demonstrates that
> imposition of the burden on that person - - (1) is in furtherance
> of a compelling governmental interest; and (2) is the least
> restrictive means of furthering that compelling governmental
> interest.

42 U.S.C. § 2000cc-1(a).  The Supreme Court in <u>Cutter</u> rejected a facial challenge to the

RLUIPA's institutionalized-persons provision on Establishment Clause grounds, finding that

the provision does not "elevate accommodation of religious observances over an institution's

need to maintain order and safety."  <u>Id.</u>, at 2122.  Rather, the Court found that the

institutionalized-persons provision of the RLUIPA "protects institutionalized persons who

are unable freely to attend to their religious needs and are therefore dependent on the

government's permission and accommodation for exercise of their religion."  <u>Id.</u>

Defendant admits that "courts have upheld various religious accommodations" by a

governmental entity, but Defendant contends that the accommodation requested by Plaintiffs

would provide a religious benefit that shows favoritism for one religion over others and

would give religious prisoners "a position of perceived power to command preferential treatment that could well be the first step to gaining exemptions from whatever other prison regulations they wish." Defendant's Motion for Summary Judgment and Brief in Support, at 22.

The Supreme Court in <u>Cutter</u> rejected a similar argument presented by the state corrections director in that case.  The Court reasoned that

> [w]hile some accommodations of religious observance, notably the opportunity to assemble in worship services, might attract joiners seeking a break in their closely guarded day, we doubt that all accommodations would be perceived as "benefits." For example, congressional hearings on RLUIPA revealed that one state corrections system served as its kosher diet "a fruit, a vegetable, a granola bar, and a liquid nutritional supplement - - each and every meal."

<u>Cutter</u>, 125 S.Ct. at 2122 n. 10 (citation omitted).  Defendant already provides a myriad of religious diet accommodations for State inmates, including a non-pork diet and a vegetarian diet, as well as other accommodations such as providing inmates with sack lunches to eat after special religious observances and excusing the adherents of various religious faiths from working on religious holidays.  <u>Fulbright v. Evans</u>, Case No. CIV-03-99, Special Report (Doc. #9) attachments, especially: DOC OP-070202, Modified Diet Request Forms, Affidavit of Larry Turner, Food Service Manager for Joseph Harp Correctional Center, and Addendum to Special Report (Doc. #12).  Under these circumstances, Defendant's assertion that providing a kosher diet somehow "crosses that line" concerning acceptable and unacceptable religious accommodations is not persuasive.  As the Supreme Court recognized in the pre-

eminent Establishment Clause decision, <u>Lemon v. Kurtzman</u>, 403 U.S. 602, 614 (1971), "total separation [between church and state] is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable." There is no hard line separating church and state, rather, "the line of separation, far from being a 'wall,' is a blurred, indistinct, and variable barrier depending on all the circumstances of a particular relationship." <u>Id.</u> In the prison context in which this case arises, the Plaintiffs have no freedom to exercise their religion in the manner in which a citizen outside the prison may choose to do so. Their right to practice their religion is wholly determined by prison authorities. Hence, the Defendant and the State of Oklahoma are necessarily entangled with the religious activities in which prisoners engage during their confinement.

Defendant posits that Plaintiffs wish to impose a "strict scrutiny" standard on Defendant's discretionary decision concerning religious diets. This is exactly the standard that the RLUIPA applies to institutional decisions affecting inmates' religious rights.[6] Although Plaintiffs have not raised a claim under RLUIPA, by adopting the RLUIPA Congress clearly expressed its desire to protect the free exercise rights of inmates, including Plaintiffs, by imposing a greater burden upon prison officials to show a compelling governmental interest with respect to institutional policies which interfere with inmates' religious exercise rights. Far from being the "dramatic enhancement of religious inmates'

---

[6]The RLUIPA expansively defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §2000cc-5(7)(A).

15

rights" posited by Defendant, the provision of kosher meals to Orthodox Jewish inmates does not significantly differ from the various religious dietary accommodations already provided in the Oklahoma prison system for adherents of the Muslim, Buddhist, Hare Krishna, and Seventh-Day Adventist religious faiths. So long as Defendant provides religious diet accommodations for other religions, the fact that Defendant must provide adherents to the Jewish Orthodox religion with frozen kosher dinners served with disposable utensils, which is the method chosen by Defendant to accommodate Plaintiffs under the preliminary injunction, does not substantially entangle the prison in a particular religion. There is no material issue of fact for trial with respect to Defendant's Establishment Clause claim, and Defendant is not entitled to summary judgment concerning this issue.

VIII.  Free Exercise Clause

Plaintiffs seek summary judgment concerning their Free Exercise claim, and Defendants also seek summary judgment concerning Plaintiffs' Free Exercise claim. In the Second Supplemental Report and Recommendation, the undersigned analyzed Plaintiffs' Free Exercise claim under Turner v. Safley, 482 U.S. 78 (1978), in connection with the factors necessary to the preliminary injunction determination, and concluded that Plaintiffs had shown a substantial likelihood of success concerning their claim that DOC's policy of not providing kosher diets to them violates their First Amendment right to freely exercise their Orthodox Jewish religion. The Court adopted the recommendation that a preliminary injunction should issue, and the preliminary injunction became effective on January 21, 2005,

when the Court ordered Defendant to provide the Plaintiffs a kosher diet at no cost to them until further order of the Court.

In Defendant's Motion for Summary Judgment, Defendant urges that DOC's economic and institutional security concerns are legitimate penological reasons for refusing to provide the kosher diet requested by Plaintiffs. With respect to the issue of the expense of providing the kosher diet, Defendant asserts that the cost per inmate of providing a kosher diet in comparison with the average daily cost of feeding each inmate a non-kosher diet would increase between 350 % and 840 %.[7] Defendant asserts that such an increase in the average daily cost to feed a prisoner is "hardly *de minimus*" and represents a significant burden on DOC. Defendant's Motion for Summary Judgment and Brief in Support, at 16. With respect to the issue of institutional security concerns, Defendant points to "a recent upswing in violence at DOC facilities," a potential need to "reduce its force of employees" in order to pay for the increased costs of providing the religious diet requested by Plaintiffs, a "demonstrated history of problems directly related to food, including riots," and the negative effects of inmate "perceptions" of privilege associated with the provision of a religious-based diet.

---

[7]With respect to the Defendant's assertion that the increased costs of providing kosher diets provide a legitimate penological reason for the current policy of not providing kosher diets, Defendant elected to provide pre-packaged, pre-prepared kosher meals to inmates following the entry of the preliminary injunction. Thus, any evidence concerning the construction and maintenance of kosher kitchens is not material to the resolution of the instant motions.

As the undersigned found in the Second Supplemental Report and Recommendation, it is clearly-established law in this circuit that prisoners have a constitutional right to a diet conforming to their sincerely held religious beliefs, unless denying the diet is "reasonably related to legitimate penological interests." Beerheide, 286 F.3d at 1184-1185.  To resolve the cross-motions for summary judgment, the Court must determine whether there are material, disputed facts concerning the issue of whether Defendant has unconstitutionally infringed upon Plaintiffs' right to receive a kosher diet consistent with their Orthodox Jewish faith.  The factors relevant to this determination include: "(1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights." Id. at 1185 (citing Turner, 482 U.S. at 89-91).  See O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987)(requiring the application of the Turner analysis to prisoner's claims of a deprivation of the First Amendment's Free Exercise Clause due to an institutional policy).

"[T]he prison administration is required to make a minimal showing that a rational relationship exists between its policy and stated goals." Beerheide, 286 F.3d at 1186.  There is no doubt that maintaining a fixed budget and institutional security are legitimate penological goals.  Id. (agreeing with district court that "prisoner administrators have a legitimate interest in working within a fixed budget" and "a legitimate concern that other

inmates might react negatively to providing some prisoners with a kosher diet"). This factor therefore weighs in favor of Defendant.

The second Turner factor requires a determination of whether Plaintiffs have alternative means of exercising the right to maintain a kosher diet. The only alternatives offered by Defendant at the hearing on the preliminary injunction, through the testimony of Mr. Boone, a DOC Deputy Director, are the availability of the non-pork and vegetarian diets that are now served in Oklahoma prison facilities and the opportunity given inmates to purchase kosher food from prison canteens. It is undisputed that the non-kosher meals provided to inmates do not meet the strict requirements for food preparation, consumption, or storage of kosher food. In Beerheide, the Colorado Department of Corrections offered the same two food options of non-pork or vegetarian meals for the plaintiffs who requested a kosher diet. Id. at 1186-1187. The Tenth Circuit Court of Appeals clearly stated that these options are "not an alternative at all" to the kosher diet because the options do not satisfy the kosher dietary laws, or kashruth, for Orthodox Jews. Id. at 1187. Moreover, Rabbi Goldman testified at the preliminary injunction hearing that an individual who desires to convert to Orthodox Judaism would want to follow the strict kosher dietary laws of the faith and that observing the kosher dietary laws of Orthodox Judaism is considered an opportunity to have a closer relationship with God. Courts have recognized that "Orthodox Jews consider a kosher diet a religious law," Ward v. Hatcher, No. 97-16390, 1999 WL 109669 (9th Cir. Mar. 1, 1999)(unpublished op.), cert. denied, 527 U.S. 1009 (1999), and that Orthodox Jews attach

19

"deep religious significance" to the kosher dietary laws. <u>Kahane v. Carlson</u>, 527 F.2d 492, 495 (2nd Cir. 1975).

The DOC's second alternative requires inmates to pay for their kosher meals.  This alternative in effect punishes Plaintiffs on the basis of their faith, a result that one court termed "wholly repugnant to the free exercise of religion guaranteed by the First Amendment." <u>Thompson v. Vilsack</u>, 328 F.Supp.2d 974, 978-979 (S.D. Iowa 2004).  In <u>Beerheide</u>, the Tenth Circuit Court of Appeals rejected the proposal of the Colorado Department of Corrections that inmates be required to make a co-payment for a kosher diet, finding that the co-pay system was not an alternative means of following Jewish dietary laws because "[p]urchasing meals in the canteen is financially impossible for prisoners of limited means" and because requiring prisoners to go into debt in order to eat does not further their rehabilitation but forces them into a "Hobson's choice rather than a true alternative." <u>Beerheide</u>, 286 F.3d at 1187-1189.

It is also undisputed that Defendant, through DOC policy, allows inmates to practice Orthodox Judaism by attending services, participating in Jewish holidays, and possessing articles of importance to the Orthodox Jewish faith. In light of the holding in <u>Beerheide</u> that the inmates were entitled to a kosher diet and that the Colorado Department of Corrections had not offered a viable alternative to observing "the essential tenet of Judaism of eating a kosher diet," the opportunities for religious expression offered by Defendant are not reasonable alternatives.  Accordingly, this factor weighs in favor of the Plaintiffs.

The third <u>Turner</u> factor requires the Court to determine what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally.  The Supreme Court recognized in <u>Turner</u> that "few changes [in prisons] will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order." <u>Turner</u>, 482 U.S. at 90.  There is no dispute that the cost of providing kosher meals to Orthodox Jewish inmates will be greater than the cost of the non-kosher meals available to the general inmate population.  Defendant asserts that the pre-packaged frozen kosher meals DOC chose to provide to Plaintiffs under the preliminary injunction cost an average of $7.00 per meal or $21.00 per day, representing an 840 % increase in the cost of feeding the Plaintiffs per day.  Defendant's evidence presented in connection with this factual assertion is the affidavit of Greg Williams.  In his affidavit, Mr. Williams, who is the Assistant Deputy Director of Operations Support for DOC, presented a list of the "current cost of the various frozen kosher entrees" selected by DOC to provide kosher food to Plaintiffs following the entry of the preliminary injunction.  Defendant's Motion, Ex. 3.  Using the figures provided by Mr. Williams in his affidavit, the average cost of these seven different frozen dinners is $5.98.  Mr. Williams estimates that supplemental items such as fruit, crackers, milk, coffee, margarine, and salad necessary to provide a nutritionally-adequate diet range in price from 76 cents to $1.09 per meal. <u>Id.</u>  Mr. Williams also avers that he hired a licensed dietician to determine the nutritional quality of the kosher meals at a cost thus far of $960.00.  <u>Id.</u>

Defendant has chosen one method of accommodating Plaintiffs' request for a kosher diet.[8]  This dietary option is undoubtedly more expensive than the non-kosher diets now provided by DOC.  Plaintiff has presented evidence that less expensive frozen kosher meals are available on the market at a cost of approximately $2.89 per meal.  Plaintiffs provide evidence that the less-expensive frozen meals are being used at Davis Correctional Facility to provide inmates with a kosher diet at that private prison facility. Plaintiff's Response, Ex. 7. Although Defendant disputes that DOC is capable of buying frozen kosher meals at this price because of its current food vendor contract, Defendant does not present evidence that DOC's approved food vendors are unwilling or unable to purchase cheaper frozen kosher meals. It would not be rational for Defendant to merely allow its food vendors to purchase more expensive food if less expensive food is available from another source.  Moreover, Defendant does not contend that the less-expensive frozen meals offered as an alternative by Plaintiffs would not be nutritionally adequate.

Despite the increased cost for prison systems associated with kosher diets, the Tenth Circuit Court of Appeals and other circuit courts have found under the Turner analysis that the prison system must accommodate the kosher dietary laws of Orthodox Jewish inmates. Beerheide, 286 F.3d at 1191 (affirming district court's finding that Colorado Department of Corrections has failed to show that either its budget or its guards or other inmates would be more than minimally impacted by providing kosher diets free-of-cost); Johnson, 150 F.3d at

---

[8]Neither party has presented evidence concerning other alternatives for accommodating Plaintiffs' request for a kosher diet.

283( Third Circuit Court of Appeals holding that free exercise clause required prisons to provide inmates with a diet sufficient to sustain them in good health without violating the kosher laws); <u>Ashelman</u>, 111 F.3d at 678 (Ninth Circuit Court of Appeals holding prison must provide Orthodox Jewish inmate with a diet sufficient to sustain him in good health without violating the laws of kashruth); <u>Kahane v. Carlson</u>, 527 F.2d 492 (2nd Cir. 1975)(holding prison was required to provide a diet sufficient to sustain the prisoner in good health without violating the Jewish dietary laws but "without otherwise mandating specific items of diet"); <u>Ward v. Hatcher</u>, No. 97-16390, 1999 WL 109669 (9th Cir. Mar. 1, 1999)(unpublished op.)(holding prison's refusal to provide inmate with a kosher diet was not reasonably related to a legitimate penological interest and that "[r]easonable alternatives exist" which would allow the prison to accommodate the inmate's Orthodox Jewish religious beliefs consistent with the prison's correctional goals, including providing one frozen kosher dinner supplemented by other kosher items already on the prison menu), <u>cert. denied</u>, 527 U.S. 1009 (1999).   <u>See also</u> <u>Love v. McCown</u>, No. 02-1155, 38 Fed. Appx. 2002 (8th Cir. 2002)(unpublished op.)(affirming entry of preliminary injunction requiring prison to provide inmate with kosher food items and weekly monetary deposits into his prison account to be used to buy kosher food from the commissary at cost in cause of action seeking provision of kosher diet under RLUIPA and First Amendment).

Defendant provides no information concerning the number of inmates who have requested the accommodation of a kosher diet in the interim since the preliminary injunction issued. Plaintiffs have provided evidence that at one private prison operating in Oklahoma,

the Davis Correctional Facility ("DCF"), an average of 10 to 14 inmates actually participate in the kosher diet line,  and that the kosher diet provided at DCF has not engendered any complaints from inmates other than complaints from "chronic complainers who complained about everything." Plaintiffs' Response, Ex. 7 (Affidavit of Alan Kerby).  In a "revised affidavit," Mr. Kerby, who identifies himself as a volunteer chaplain with Jewish Prisoner Services International and as the secretary of the Oklahoma Interfaith Council on Prison Ministry, avers that the kosher diet implemented at DCF has not had a significant negative impact on the prison's budget, guards, or other inmates, and that he has provided DOC officials with information concerning the less-expensive, pre-packaged kosher meals served at DCF. Fulbright v. Ward, Case No. CIV-03-99-W (Doc. #93).

Defendant has not provided any evidence as to the overall effect of the kosher dietary option upon DOC's budget, relying instead on the estimated increase in the cost per inmate of providing a kosher diet.  However, Plaintiffs have submitted evidence showing that DOC's food budget for the current year is over 31 million dollars. Plaintiffs' Response, Exs. 6, 9. Courts have recognized that only a small number of inmates partake of a kosher diet and thus the expense associated with providing a kosher diet represents only a *de minimis* portion of the correctional budget. See Beerheide v. Suthers, 82 F.Supp.2d 1190, 1199-1200 (D. Colo. 2000)(finding that "relatively few inmates, fourteen, ha[d] sought to keep kosher" following entry of preliminary injunction, that Colorado Department of Corrections' estimated annual cost of providing kosher food was only 0.158 percent of the agency's food service budget, and therefore providing kosher meals had a *de minimis* effect on agency's food service

24

budget); Luckett v. Lewis, 883 F. Supp. 471, 480 (D. Ariz. 1995)("Only a few prisoners have legitimate religious beliefs which require they maintain a Kosher diet, and the expense of providing Kosher meals to these few prisoners is minimal.").   Under these circumstances, DOC has not shown that the minimal cost associated with providing kosher diets to the small number of Orthodox Jewish inmates who would potentially request a kosher diet would create a significant financial burden on DOC's annual food budget.

With respect to the administrative difficulties associated with providing a kosher diet, the federal Bureau of Prisons provides kosher diets for federal inmates who request one and who "articulat[e] the religious motivation" for their request. 28 C.F.R. §548.20(a).  In the Special Report prepared by DOC, the food service manager at Joseph Harp Correctional Center avers in an affidavit that the facility prepares 3,300 meals daily for 1,100 inmates, including 330 non-pork meals and 360 special "healthy heart" diets.  Special Report (Doc. #9), Affidavit of Larry Turner. The official states that compliance with a diet request is monitored by staff in the following manner:

> Inmates are required to scan their identification badges through a scanner to record they have gone through the line.  Staff is able to determine if an inmate receives more than one try without permission or if he eats in the wrong line by the information provided through the scanning system.  If an inmate on the 'Special Diet List' fails to eat in the special diet line and chooses to eat on the regular line, unit staff is notified.  It is then the unit staff's responsibility as to either handle formally through a 'Disobedience to Orders' misconduct or to handle informally with a verbal reprimand.

Id.  In addition to this daily monitoring procedure, DOC has established a policy requiring that an inmate who desires to change his or her food selection based on the requirements of religious faith must submit a written notice of the particular faith requiring the meal. Id., DOC OP-030112(VII)(A), "Religious Programs." In a recent addendum to this policy, DOC now provides that "[a]ll tenets of an inmate's faith practice that require accommodations by the department must be supported and verified by the faith's recognized sacred text, historically established procedures and outside religious authorities." <www.doc.state.ok.us/offtech/op030112.htm>. The addendum to the policy also establishes a review procedure for religious accommodation requests that are denied by the facility head or the facility chaplain. Id.  DOC has established a clearly-defined and adequate monitoring program for determining the religious sincerity of its inmates and for monitoring the meals of inmates who have requested religious-based diets.  DOC has not shown that accommodating Plaintiffs' religious dietary request would have substantial negative consequences in terms of  financial burdens or administrative problems.

Defendant contends that providing a kosher diet would result in significant security concerns.  The only evidence presented by Defendant in support of this assertion is a memorandum authored by a DOC official who described a physical assault upon Plaintiff Cottriel by another inmate on July 10, 2004.  According to the memorandum, the inmate who assaulted Plaintiff Cottriel stated that he went to Cottriel's cell and walked in to ask him a question, inmate Cottriel threatened to kill the inmate if he didn't leave, and the inmate left and then decided to return to Cottriel's cell and assault him because of the threatening

statement made earlier by Cottriel.  Defendant's Motion, Ex. 4; Plaintiff's Response, Ex.8.

The assault upon Cottriel was not related to Cottriel's status in this cause of action or his

status as an Orthodox Jew.  Rather, the Defendant's evidentiary material shows that Plaintiff

Cottriel was assaulted because of a threat he made upon the life of another inmate.

Defendant provides no evidentiary materials supporting the conclusory assertion that the

provision of a kosher diet will engender jealousy and violence among inmates and a

concomitant negative effect on prison guards.  Courts have recognized that a disruptive effect

"is present in every case that requires special accommodations for adherents to particular

religious practices."  Ward v. Walsh, 1 F.3d 873, 878 (9th Cir. 1993).  Defendant already

provides religiously-motivated diets to accommodate inmates of other religious faiths, and

Defendant does not present any evidence showing a negative effect on other inmates or

guards as a result of these accommodations.

Defendant has presented evidence that one inmate has filed a civil rights action in this

Court requesting a special diet for religious reasons that is not now accommodated by

Defendant.  See undisputed fact number 14.   This one cause of action, which is in its

preliminary stages in this Court, does not provide persuasive evidence that accommodating

Plaintiffs' request for a kosher diet will lead to a multitude of frivolous religious diet requests

or litigation.  Even accepting Defendant's contention that other prisoners who are not

provided a kosher diet might conclude Plaintiffs are receiving favorable attention, prompting

feelings of jealousy, "this effect is always present when special accommodations are made

for religious beliefs."  Ashelman, 111 F.3d at 677.  Defendant speculates that other kosher-

related litigation will follow if DOC is required to provide kosher diets. However, this possibility of further litigation could also occur as a result of the provision of the religious-based diets already being provided by DOC[9] and as a result of the enactment of the RLUIPDA. Thus, the third <u>Turner</u> factor weighs in favor of Plaintiffs.

The Court must also consider the availability of alternative means to accommodate Plaintiffs' free exercise rights at minimal cost. The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable." <u>Turner</u>, 482 U.S. at 89. Plaintiffs contend that Defendant's cost estimates for purchasing pre-packaged, frozen kosher dinners are speculative and fail to consider the less-expensive, pre-packaged, frozen kosher dinners that are available on the market. In response to this assertion, Defendant states that it is restricted to purchasing food from an approved vendor, and that the food vendor's choices concerning particular food items it purchases from third-party sources for DOC "cannot be attributed to DOC." Defendant's Response to Plaintiffs' Motion for Summary Judgment, at 3. If Defendant is at all concerned about its food budget, then it is not reasonable for

---

[9]In this respect, Defendant asserts that "Plaintiff Cottriel has already expressed a desire to file further litigation, despite the provision of no cost Kosher meals to him." Defendant's Response to Plaintiff's Motion for Summary Judgment, at 6. As support for this statement, Defendant refers to an exhibit that purports to be "a record of conversations concerning the kosher diet and related issues" made by an assistant warden for DOC. Defendant's Response, Ex. 3. This unsworn "record of conversations" is not an acceptable evidentiary document for judicial consideration of the cross-motions for summary judgment. <u>See</u> Fed. R. Civ. P. 56 (c) (summary judgment motions are decided upon the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any...." presented by the parties). Therefore, this document will not be considered in resolving the cross-motions.

Defendant to simply "wash its hands" of food purchasing decisions and allow a food vendor to obtain food from a third-party source at a greater cost if the vendor is capable of obtaining the same type of food from a less-expensive source.  Defendant has provided no evidence that its food vendors are not capable of purchasing less-expensive frozen kosher dinners. Moreover, Defendant has presented the affidavit of a DOC official who avers that following the entry of the preliminary injunction he "coordinated efforts with [prison] staff and [a food vendor] in purchasing a variety of frozen Kosher entrees" and that several "Kosher food items are being used to supplement the entrees as advised by the dietician." Id., Ex. 5.  This statement indicates that, far from being incapable of determining appropriate sources for purchasing kosher dinners, DOC prison officials have actively participated with one of DOC's approved food vendors in choosing the third-party sources for purchasing kosher food under the preliminary injunction.  Thus, Defendant's cost estimates for providing kosher meals to Plaintiffs are less than reliable, and because Plaintiffs have offered an alternative that fully accommodates their constitutionally-protected right at *de minimis* cost, Defendant's assertion of a significant financial burden is an exaggerated response to the Plaintiff's request for a kosher diet.

Defendant also contends that DOC has incurred "significant administrative costs" in administering a kosher food program under the preliminary injunction. Id., at 5.  Defendant is apparently referring to the estimation of one DOC official contained in his affidavit of the number of hours the DOC official had spent in implementing the kosher diet program as well as the cost of employing a dietician to advise the official concerning the nutritional value of

the meals provided to Plaintiffs.  However, these initial costs would be connected with the implementation of any religious-based or medically-required dietary changes.  Thus, they are not evidence of on-going budgetary concerns associated with the kosher diet requested by Plaintiffs.

Although <u>Turner</u> does not require DOC to demonstrate they have considered or tried all other methods of accommodating an inmate's request for a kosher diet, Defendant must provide "convincing evidence" that the cost and security issues advanced as reasonable bases for not providing a kosher diet are "other than *de minimis*." <u>Beerheide</u>, 286 F.3d at 1192. Defendant has not satisfied this burden.  Although the undersigned is cognizant of the strapped financial status of DOC at this time and is also aware that DOC prison officials must constantly deal with tensions between inmates resulting from perceptions of favoritism based on religious accommodations, DOC's refusal to provide a kosher diet, in light of its provision of religious-based diets for other inmates without negative impact, is not entitled to total deference.  Here, the record does not reflect more than a *de minimis* impact upon DOC's economic resources and does not reflect any significant negative impact upon the other concerns submitted by DOC as rational bases for the current policy.  Accordingly, the undersigned finds that there are no material issues of fact for trial, that Plaintiffs are entitled to summary judgment, and that Defendant is not entitled to summary judgment.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that Plaintiffs' Motion for Summary Judgment be GRANTED and that Defendant's Motion for Summary Judgment be

DENIED, that judgment issue in favor of Plaintiffs and against the Defendant, and that the temporary injunction be made permanent.  The parties are advised of their respective right to file an objection to this Third Supplemental Report and Recommendation with the Clerk of this Court by ___ September 28th ___, 2005, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The parties are further advised that failure to make timely objection to this Third Supplemental Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Third Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ___ 8th ___ day of ___ September ___, 2005.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE