

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

JON ANDREW COTTRIEL, )
)
Plaintiff, )
)
vs. ) No. CIV-03-125-W[1]
)
JUSTIN JONES, Director, )
)
Defendant. )

## ORDER

On August 29, 2013, United States Magistrate Judge Gary M. Purcell issued his findings and recommendation with regard to the Application to Hold Defendant In Contempt filed by plaintiff Jon Andrew Cottriel pursuant to Rule 70(e), F.R.Civ.P. Cottriel was advised of his right to object, and the matter now comes before the Court on Cottriel's Objection to Sixth Supplemental Report and Recommendation [Doc. 219].

The Court has reviewed the record[2] de novo and for the reasons stated herein, finds that defendant Justin Jones, Director of the Oklahoma Department of Corrections ("ODOC"), should address certain issues before the Court further considers Magistrate Judge Purcell's suggested disposition of Cottriel's request that ODOC be held in contempt

---

[1] On February 26, 2004, the Court consolidated this matter with Case No. CIV-03-99-W and Case No. CIV-03-1465-W, see Doc. 54, and advised the parties that all future filings should reflect all three captions and case numbers. See id. Although the Court did not direct the Clerk of the Court to file the original Application to Hold Defendant in Contempt [Doc. 194] in any case other than Case No. CIV-03-125-W and although plaintiff Jon Andrew Cottriel did not file his amended Application to Hold Defendant in Contempt [Doc. 197] in any case other than Case No. CIV-03-125-W, the Magistrate Judge's Sixth Supplemental Report and Recommendation was filed in each of the three cases. Accordingly, the Court DIRECTS the Clerk of the Court to terminate the Sixth Supplemental Report and Recommendation now pending in Case No. CIV-03-99-W, see Doc. 186, and in Case No. CIV–03-14654-W. See Doc. 189.

[2] For a more complete record, the Court has considered Cottriel's reply [Doc. 214] file-stamped June 20, 2013.

for violating the terms of the Judgment for Permanent Prospective Injunctive Relief entered in this matter in 2006.

Cottriel, together with Dennis Earl Fulbright and Jerry Harmon, who are or were state inmates, brought suit against ODOC and alleged that his right under the free exercise clause of the first amendment to the United States Constitution to freely exercise his Orthodox Judaism religion had been violated by ODOC's refusal to grant his request for a kosher diet. Cottriel had named as defendant Ron Ward, in his then official capacity as ODOC Director, and had sought an injunction to obtain, at no cost to himself, a kosher diet that was consistent with the principles of Orthodox Judaism and that satisfied the nutritional value standards set by the American Correctional Association.

Adopting Magistrate Judge Purcell's findings and recommendations, the Court on January 21, 2005, first granted a preliminary injunction and ordered Ward "to provide [Cottriel] . . . a kosher diet . . . until further Order of the Court." Doc. 79 at 8. The preliminary injunction was determined to be "narrowly drawn, extend[ ] no further than necessary to correct the violation of . . . [Cottriel's] right to the free exercise of [his] . . . religion . . . and . . . the least intrusive means necessary to correct this violation." Doc. 89 at 2 (citation omitted).

On February 8, 2006, the Court entered the Judgment for Permanent Prospective Injunctive Relief ("Judgment") in Cottriel's favor, after finding that a permanent injunction was "necessary to remedy a violation of [Cottriel's] . . . right[ ] to freely exercise [his] . . . Orthodox Jewish religion . . . ." Doc. 145 at 2. Jones, who had been substituted in his official capacity as ODOC Director as the defendant pursuant to Rule 25(d)(1), F.R.Civ.P., was ordered "to immediately provide . . . [Cottriel a] . . . kosher diet[ ] at no cost." Doc. 145

2

at 2. The Court further ordered that the "diet[ ] shall comply with all nutritional requirements and standards currently applicable to the diets served to all other inmates in . . . [ODOC] custody . . . ." Id.

Cottriel transferred to Oklahoma State Reformatory ("OSR") in 2012, and he has complained that "[s]ignificant portions of the meals offered by [ODOC at OSR] . . . are not kosher due to lack of qualified supervision and training and/or use of non-kosher utensils during preparation/serving." Doc. 197 at 2, ¶ 1. Cottriel has further charged that although the American Dietetic Association ("ADA") dictates that a moderately active adult male should receive 2200 to 2400 calories per day, see id., his "meal portions that are kosher (thereby consumable under Jewish law) provide an average of approximately 1600 calories per day except on Saturday," id., when his "meals that are kosher provide only 800 calories (approximately)." Id. (citation omitted). Cottriel has asserted that he "has had to supplement the diet provided with personal funds in order to . . . meet the nutritional requirements of a healthy diet as recommended by the ADA." Id. at 3, ¶ 4.

Cottriel has further argued that "[t]here is no 'qualified kosher supervision,'" id. at 2, ¶ 2, which phrase Cottriel has defined as "highly-competent skilled and learned Jews [who] have supervised the entire process: the source, preparation and service of the [meal or individual products] . . . ," id., and that there are "no kosher utensils available for food preparation." id. In his application, Cottriel has also contended that OSR's "Shabbos meals are not in compliance with the mandates of Orthodox Judaism," id. ¶ 3, and should "include wine (non-alcoholic or grape juice), two loaves of bread (or rolls or whole matzos), fish and meat." Id.

3

ODOC has responded that OSR officials have made good faith efforts to comply with the Court's Judgment by assigning an inmate, Marvin Gibson, who is trained and familiar with ODOC's kosher diet protocol, see Affidavit of Baldemar Hernandez (June 7, 2013) at 1, ¶ 8 (hereafter "Hernandez Affidavit"), to prepare kosher meals for Cottriel and other inmates on a kosher diet, including Gibson himself. ODOC has further asserted that Gibson is supervised and that the documents ODOC has submitted show that kosher diet meals are prepared in separate areas within OSR's kitchen and with separate utensils. ODOC has argued that "[w]ith some limited exceptions," Hernandez Affidavit at 2, ¶ 14, OSR follows an approved kosher diet menu and that such menu has been certified as nutritionally compliant. See id. ¶ 15.[3] Finally, ODOC has asserted that in those instances when Cottriel has lodged a complaint or raised an menu issue at OSR, Baldemar Hernandez, in his capacity as OSR food service manager, has attempted to resolve the matter within the rules and protocols related to kosher diets.

To prevail, Cottriel "has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." Reliance Insurance Co. v. Mast Construction Co., 159 F.3d 1311, 1315 (10th Cir. 1998)(citations omitted). There is no dispute about the first two elements.

As to the third element, the Court must either find that ODOC has violated a specific term of the Court's Judgment or that ODOC has made more than a reasonable effort to

---

[3]Hernandez has stated that "OSR currently follows the Oct. 23, 2012 approved Kosher Diet menu except as to the day 7 Lunch and Dinner. The entrée is replaced with two (2) boiled eggs and two (2) servings of peanut butter." Hernandez Affidavit at 2, ¶ 14. But see Doc. 197-2 at 2 ("Large Salad, Boiled eggs, Crackers, Orange, Celery/Carrot sticks, Drink").

4

provide nutritionally adequate meals to Cottriel that comply with acceptable kosher diet meal preparation requirements as well as ODOC's kosher menu preparation and serving protocol.

In its initial response, ODOC, as stated, asserted that "Gibson . . . was both trained and familiar with the kosher diet protocol." Doc. 213 at 3 (footnote and citation omitted).[4] Hernandez repeated the assertion in his affidavit: "Gibson . . . had been previously trained," Hernandez Affidavit at 1, ¶ 8, and Hernandez explained that due to "Gibson's prior training and familiarity with kosher meal preparations . . . Gibson was the inmate assigned as the kosher food preparation person at OSR." Id. ¶ 10. Hernandez, the OSR employee who supervises Gibson, but who himself is not trained,[5] further stated that "based upon [his] . . . observations, [Gibson] appears to follow the protocols applicable to . . . kosher meal[ ] preparation." Id. at 2, ¶ 11 (emphasis added).

Gibson, however, in his affidavit, declared that he "ha[d] not received any training from a qualified kosher supervisor, e.g., a rabbi, on the rules according to Jewish law in preparing kosher meals," Affidavit of Marvin Gibson (March 25, 2013) at 1, ¶ 2, that he is "not supervised by a qualified kosher supervisor during kosher meal preparation," id. ¶ 3, and that he "do[es] not use or have access to utensils certified by [a] qualified kosher supervisor . . . to prepare kosher meals." Id. ¶ 4.

---

[4] ODOC has contended that Cottriel has even admitted "that it is possible that Gibson has been trained." Doc. 213 at 3, n.2. However, Cottriel's depositional testimony upon which ODOC has relied and which allegedly supports this contention–page 21, lines 4-20–was not provided the Court.

[5] Hernandez has attested that "[a]s Food Service Manager I am aware of the protocol for kosher/halal menu preparation and serving." Hernandez Affidavit at 2, ¶ 6.

In support of his request to hold ODOC in contempt, Cottriel further relied upon a document published by The Aleph Institute, see Doc. 197-2, that advises that in institutional environments, "[k]osher food can be made available to Jewish Inmates by: (1) preparing it on site with proper kitchen facilities under the direction of a qualified kosher food supervisor; (2) obtaining pre-packaged meals from kosher food vendors . . . and products with appropriate kosher certification symbols; and/or (3) obtaining fresh products . . . ." Id. at 8. See also OP-070202, Attachment A at 1 ("vegetable preparation may be done by designated properly trained food service personnel"); Doc. 197-2 at 13 ("no kosher supervisory agency will officially certify food service preparation that does not employ full-time qualified kosher supervision . . . [unless] personnel involved in the handling and preparation are . . . provided with adequate training").

The Judgment was entered because the Court had determined that a permanent injunction was "necessary to remedy a violation of . . . [Cottriel's] right[ ] to freely exercise . . . [his] Orthodox Jewish religion as guaranteed by the first amendment . . . ." Doc. 145 at 2. Because questions have been raised that challenge whether ODOC through its employees at OSR have taken all reasonable steps and have substantially complied with the Court's Judgment, the Court DIRECTS ODOC to respond within fourteen (14) days and address in detail Gibson's alleged lack of training, the alleged absence of, and the need, if any, for qualified kosher supervision in OSR's kitchen, the alleged lack of kosher utensils for food preparation and serving, and whether on Saturday, the meals actually provided at OSR meet recognized nutritional requirements.

ENTERED this 21st day of October, 2013.

LEE R. WEST
UNITED STATES DISTRICT JUDGE