
IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

JON ANDREW COTTRIEL, )
)
Plaintiff, )
)
vs. ) No. CIV-03-125-W[1]
)
JUSTIN JONES, Director, )
)
Defendant. )

## ORDER

On August 29, 2013, United States Magistrate Judge Gary M. Purcell issued his findings and recommendation with regard to the Application to Hold Defendant In Contempt filed by plaintiff Jon Andrew Cottriel pursuant to Rule 70(e), F.R.Civ.P. Cottriel, proceeding pro se, was advised of his right to object, and the matter came before the Court on Cottriel's Objection to Sixth Supplemental Report and Recommendation [Doc. 219].

The Court reviewed the record[2] de novo and determined that defendant Justin Jones, Director of the Oklahoma Department of Corrections ("ODOC"), should address certain issues before the Court further considered Magistrate Judge Purcell's suggested disposition of Cottriel's request that ODOC be held in contempt for violating the terms of the Judgment for Permanent Prospective Injunctive Relief entered in this matter in 2006.

---

[1] On February 26, 2004, the Court consolidated this matter with Case No. CIV-03-99-W and Case No. CIV-03-1465-W, see Doc. 54, and it advised the parties that all future filings should reflect all three captions and case numbers. See id. Since Cottriel's original Application to Hold Defendant in Contempt [Doc. 194] and amended Application to Hold Defendant in Contempt [Doc. 197] were filed only in Case No. CIV-03-125-W, the Court DIRECTS the Clerk of the Court to file the instant Order only in the case-at-bar.

[2] For a more complete record, the Court has considered Cottriel's reply [Doc. 214] file-stamped June 20, 2013.

See Doc. 221. Having now received and reviewed Jones' response, as supplemented, the Court makes its determination.

Together with Dennis Earl Fulbright and Jerry Harmon, who are or were state inmates, Cottriel brought suit against ODOC and alleged that his right under the free exercise clause of the first amendment to the United States Constitution to freely exercise his Orthodox Judaism religion had been violated by ODOC's refusal to grant his request for a kosher diet. Cottriel had named as defendant Ron Ward, in his official capacity as ODOC Director, and had sought an injunction to obtain, at no cost to himself, a kosher diet that was consistent with the principles of Orthodox Judaism and that satisfied the nutritional value standards set by the American Correctional Association.

Adopting Magistrate Judge Purcell's findings and recommendations, the Court on January 21, 2005, first granted a preliminary injunction and ordered Ward "to provide [Cottriel] . . . a kosher diet . . . until further Order of the Court." Doc. 79 at 8. The preliminary injunction was determined to be "narrowly drawn, extend[ ] no further than necessary to correct the violation of . . . [Cottriel's] right to the free exercise of [his] . . . religion . . . and . . . the least intrusive means necessary to correct this violation." Doc. 89 at 2 (citation omitted).

On February 8, 2006, the Court entered a Judgment for Permanent Prospective Injunctive Relief ("Judgment") in Cottriel's favor, after finding that a permanent injunction was "necessary to remedy a violation of [Cottriel's] . . . right[ ] to freely exercise [his] . . . Orthodox Jewish religion . . . ." Doc. 145 at 2. Jones, who had been substituted in his official capacity as ODOC Director as the defendant pursuant to Rule 25(d)(1), F.R.Civ.P., was ordered "to immediately provide . . . [Cottriel a] . . . kosher diet[ ] at no cost." Doc. 145

2

at 2. The Court further ordered that the "diet[ ] shall comply with all nutritional requirements and standards currently applicable to the diets served to all other inmates in . . . [ODOC] custody . . . ." Id.

Cottriel transferred to Oklahoma State Reformatory ("OSR") in 2012, and he has complained in the instant application that "[s]ignificant portions of the meals offered by [ODOC at OSR] . . . are not kosher due to lack of qualified supervision and training and/or use of non-kosher utensils during preparation/serving." Doc. 197 at 2, ¶ 1. Cottriel has further charged that although the American Dietetic Association ("ADA") dictates that a moderately active adult male should receive 2200 to 2400 calories per day, see id., his "meal portions that are kosher (thereby consumable under Jewish law) provide an average of approximately 1600 calories per day except on Saturday," id., when his "meals that are kosher provide only 800 calories (approximately)." Id. (citation omitted). Cottriel has asserted that he "has had to supplement the diet provided with personal funds in order to . . . meet the nutritional requirements of a healthy diet as recommended by the ADA." Id. at 3, ¶ 4.

Cottriel has further argued that "[t]here is no 'qualified kosher supervision,'" id. at 2, ¶ 2, which phrase Cottriel has defined as "highly-competent skilled and learned Jews [who] have supervised the entire process: the source, preparation and service of the [meal or individual products] . . . ," id., and that there are "no kosher utensils available for food preparation." Id. In his application, Cottriel has also contended that OSR's "Shabbos meals are not in compliance with the mandates of Orthodox Judaism," id. ¶ 3, and should "include wine (non-alcoholic or grape juice), two loaves of bread (or rolls or whole matzos), fish and meat." Id.

3

ODOC has responded that OSR officials have made good faith efforts to comply with the Court's Judgment by assigning an inmate, Marvin Gibson, who is trained and familiar with ODOC's kosher diet protocol, see Affidavit of Baldemar Hernandez (June 7, 2013) at 1, ¶ 8 (hereafter "Hernandez Affidavit"), to prepare kosher meals for Cottriel and other inmates on a kosher diet, including Gibson himself. ODOC has further asserted that Gibson is supervised by OSR food service manager, Baldemar Hernandez, and that the documents ODOC has submitted show that kosher diet meals are prepared in separate areas within OSR's kitchen and with separate utensils. ODOC has argued that "[w]ith some limited exceptions," Hernandez Affidavit at 2, ¶ 14, OSR follows an approved kosher diet menu and that such menu has been certified as nutritionally compliant. See id. ¶ 15.[3] Finally, ODOC has asserted that in those instances when Cottriel has lodged a complaint or raised an menu issue at OSR, Hernandez has attempted to resolve the matter within the rules and protocols related to kosher diets.

To prevail, Cottriel "has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." Reliance Insurance Co. v. Mast Construction Co., 159 F.3d 1311, 1315 (10th Cir. 1998)(citations omitted). There is no dispute that Cottriel has made the necessary showing with regard to the first two elements.

As to the third element, assuming arguendo that Cottriel has proven by clear and convincing evidence that ODOC has violated the Court's Judgment, the Court finds that

---

[3]Hernandez has stated that "OSR currently follows the Oct. 23, 2012 approved Kosher Diet menu except as to the day 7 Lunch and Dinner. The entrée is replaced with two (2) boiled eggs and two (2) servings of peanut butter." Hernandez Affidavit at 2, ¶ 14.

4

ODOC may nevertheless "avoid liability for contempt 'by showing by clear and convincing evidence that "all reasonable steps" were taken in good faith to ensure compliance with the [C]ourt['s] . . . [Judgment] and that there was substantial compliance.'" Phone Directories Co., Inc. v. Clark, 209 Fed. Appx. 808, 815 (10th Cir. 2006)(quotation omitted)(cited pursuant to Tenth Cir. R. 32.1). Accordingly, the Court must assess ODOC's level of compliance in connection with its efforts to provide nutritionally adequate meals to Cottriel that comply with acceptable kosher diet meal preparation requirements as well as ODOC's kosher menu preparation and serving protocol.

In support of his request to hold ODOC in contempt, Cottriel has argued that ODOC had two options to comply with the Court's Judgment: either provide prepackaged meals or have "qualified kosher supervision." Deposition of Jon Andrew Cottriel (May 7, 2013) at p. 92, lines 10-11 (hereafter "Cottriel Deposition"); e.g., id. at p. 93, lines 5-8. In support of his argument, Cottriel relied upon a document published by The Aleph Institute, see Doc. 197-2, that advises that in institutional environments, "[k]osher food can be made available to Jewish Inmates by: (1) preparing it on site with proper kitchen facilities under the direction of a qualified kosher food supervisor; [or] (2) obtaining pre-packaged meals from kosher food vendors . . . and products with appropriate kosher certification symbols . . . ." Id. at 8.

To the extent Cottriel has complained about OSR's decision to use prepackaged meals, the Court finds that the clear and convincing evidence presented shows that ODOC has taken "all reasonable steps" to ensure compliance with the Court's Judgment when such meals are served at OSR. As Cottriel himself has testified, "[t]he prepared [food] for

5

the most part is okay[,]" Cottriel Deposition at p. 14, lines 4-5, and "what [OSR is] . . . serving, when it's prepackaged is usually kosher." Id. lines 9-11.

The Court further finds, as ODOC's response, as supplemented, shows, that there is a separate "prep" area for kosher meals. In an interoffice memorandum dated October 29, 2013, Tracy McCollum, OSR Warden, reported:

> Milk has been ordered in half pint cartons to be served to . . . Cottriel . . . . . The first order is scheduled to arrive on Wednesday, October 30, 2013.
>
> Microwave ovens are in place for the preparation of Kosher meals. The microwaves are clearly marked, "KOSHER ONLY." The microwave ovens are in the Food Service Supervisor's Office and their use is monitored by staff. . . . .

Doc. 225-3 at 2.

The document also memorialized a meeting on October 29, 2013, attended by McCollum, Deputy Warden Bruce Bornhiem, Deputy Warden Ted Durfey, Food Service Manager I Dionne Blackmon-Simmons and Food Service Manager I Curtis McPheeters. At the meeting, McCollum

> made it clear that all meals will be served in accordance with the Master Menu. Kosher meals are to be prepared in microwave ovens marked, "KOSHER ONLY."

Id.

The documents submitted by ODOC further show that OSR's Saturday deviations from ODOC's Kosher Master Menu that have been offered to Cottriel provide 2896 calories, which amount exceeds the required nutritional guidelines. See Docs. 225-6; 225-7; Hernandez Affidavit at 3. Accordingly, the Court cannot find from the record as a whole that clear and convincing evidence exists that shows that ODOC has violated that portion of the Court's Judgment that mandates that the "diet[ provided to Cottriel] shall comply with

6

all nutritional requirements and standards currently applicable to the diets served to all other inmates in . . . [ODOC] custody . . . ." Doc. 145 at 2.

The final and arguably the most critical issue in this proceeding is whether OSR has substantially complied with the Court's Judgment because it has made available to Cottriel food that has been prepared and served on site under the control and direction of a properly trained individual. Gibson had declared that he "ha[d] not received any training from a qualified kosher supervisor, e.g., a rabbi, on the rules according to Jewish law in preparing kosher meals," Affidavit of Marvin Gibson (March 25, 2013) at 1, ¶ 2, and that he was "not supervised by a qualified kosher supervisor during kosher meal preparation[.]" Id. ¶ 3.

In its initial response, ODOC had asserted that "Gibson . . . was both trained and familiar with the kosher diet protocol." Doc. 213 at 3 (footnote and citation omitted).[4] Hernandez repeated the assertion: "Gibson . . . had been previously trained," Hernandez Affidavit at 1, ¶ 8, and, he explained that due to "Gibson's prior training and familiarity with kosher meal preparations . . . Gibson was the inmate assigned as the kosher food preparation person at OSR." Id. ¶ 10. Hernandez, the OSR employee who supervises Gibson, but who himself has not cited to any specific personal training,[5] further stated that "based upon [his] . . . observations, [Gibson] appears to follow the protocols applicable to . . . kosher meal[ ] preparation." Id. at 2, ¶ 11.

---

[4] During his deposition, Cottriel conceded that Gibson "possibly," Cottriel Deposition at p. 21, line 14, "was trained at another facility . . . by someone who was on a kosher diet[.]" Id. lines 11-13.

[5] Hernandez has attested that "[a]s Food Service Manager I am aware of the protocol for kosher/halal menu preparation and serving." Hernandez Affidavit at 2, ¶ 6.

7

In its most recent submission, ODOC has now offered the affidavit of William Weldon, who is employed in the position of Food Service Manager III at Joseph Harp Correctional Center ("JHCC"). Weldon has averred that "[p]rior to . . . Gibson's transfer [from JHCC] to [OSR] . . . , Gibson was assigned to assist in the preparation of kosher meals[, and that he (Weldon)] . . . was personally involved and supervised [the] . . . staff [at JHCC] in training . . . Gibson based on the approved protocols for Kosher diet as outlined in OP-070202." Affidavit of William Weldon (November 15, 2013) at 1, ¶ 7. Weldon has further stated that based upon his "observations of . . . Gibson at JHCC [Gibson] . . . understood and followed the kosher diet protocols as outlined in OP-070202[,]" id., and that "[b]oth . . . Gibson and other inmates assisting with kosher meal preparation had access to copies of the kosher diet protocols, as well as being provided their own copy as part of their training." Id.

Resolution of the issues of ODOC's substantial compliance and "reasonable steps" depends in large part on the definition of a "qualified kosher supervisor." Cottriel has explained the phrase as follows: "To be a qualified kosher supervisor, you've got to be Jewish." Cottriel Deposition at p. 27, lines 3-4; e.g., Doc. 197 at 2, ¶ 2 (wherein Cottriel opines that such phrase means "highly-competent skilled and learned Jews [who] have supervised the entire process: the source, preparation and service of the [meal or individual] product"). Although Cottriel has relied upon the statements of Chaplain Gary Friedman, Chairman, Jewish Prisoner Services International, see Doc. 197-1 at 1, ¶ (A); Doc. 197-2 at 13, in support of his arguments, Chaplain Friedman, who reviewed and approved ODOC protocol, stated only that "correctional food service operations [are religiously acceptable] provided that . . . personnel involved in the handling and preparation

8

are being provided with adequate training[.]" Id. There is no requirement in the Judgment that ODOC provide training to any individual, including Gibson, by a rabbi or a practicing Jew, and the fact that Gibson was not trained by a rabbi or practicing Jew does not render his training inadequate or deficient.

The Court had determined that a permanent injunction was "necessary to remedy a violation of [Cottriel's] . . . right[ ] to freely exercise [his] . . . Orthodox Jewish religion . . . ." Doc. 145 at 2. Based upon the record as a whole, the Court finds that ODOC has shown by clear and convincing evidence that it has been reasonably diligent[6] and taken every reasonable step at OSR to comply with the Court's Judgment and ensure that Cottriel's right to freely exercise his religion has not been unduly burdened or impermissibly infringed.

Accordingly, the Court

(1) CONCURS with Magistrate Judge Purcell's suggested disposition of the pending application and ADOPTS the Sixth Supplemental Report and Recommendation [Doc. 216]; and

(2) DENIES Cottriel's Application to Hold Defendant in Contempt [Doc. 197].

ENTERED this 21st day of January, 2014.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

[6]The Court is mindful that belated efforts to comply with a court order does not generally shield a party from a finding of contempt, particularly if those efforts occur after a request seeking an order of contempt has been filed. Under the circumstances, the Court finds that ODOC, while admittedly implementing certain safeguards in response to Cottriel's recent complaints, see Doc. 225-3, nevertheless has substantially complied with the Court's Judgment.

9